**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**
**May 14, 2026**
**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **L.H., D.H., S.H.-1, and M.H.**

**No. 24-575** (Berkeley County CC-02-2024-JA-96, CC-02-2024-JA-97, CC-02-2024-JA-98, and CC-02-2024-JA-99)

## MEMORANDUM DECISION

Petitioner Mother S.H.[1] appeals the Circuit Court of Berkeley County's September 8, 2024, order terminating her parental rights to her youngest four children, L.H., D.H., S.H.-1, and M.H. ("the H. children"),[2] arguing that the court erred in denying her motion for a post-adjudicatory improvement period and terminating her parental rights.[3] Upon review of the briefs, record, oral arguments, and pertinent authorities, we find no error. Therefore, a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In April 2024, the West Virginia Department of Human Services ("DHS") filed an abuse and neglect petition alleging that the petitioner's alcohol abuse impaired her parenting abilities to such an extent that it posed an imminent risk to her children's safety. The DHS further alleged that the petitioner engaged in domestic violence with her husband (the H. children's father) in the children's presence, at times involving the children; failed to protect the children from injury; and suffered from mental illness rendering her incapable of exercising proper parenting skills. The petition was precipitated by an incident in which the youngest child, then twenty-month old M.H., nearly drowned in the family pool while the petitioner was intoxicated. Although the child survived, he sustained severe injuries that resulted in permanent disabilities. The petitioner was subsequently charged with felony child neglect causing serious bodily injury.[4] At an adjudicatory

---

[1] The petitioner appears by counsel Jonathan T. O'Dell. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Counsel Daja K. Elliott appears as the children's guardian ad litem ("guardian").

[2] There were three older children involved in these proceedings, C.B.-2, S.B., and C.B.-3 ("the B. children"), who are not at issue in this appeal.

[3] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[4] At the time of the near drowning, the petitioner was serving a term of home incarceration following convictions for driving under the influence and domestic battery. After the incident involving M.H., the sentencing court revoked her home incarceration and imposed her term of imprisonment. She was released in early June 2024.

hearing in June 2024, the petitioner admitted that she abused alcohol to the detriment of her parenting ability, engaged in domestic violence in the children's presence, and failed to protect them from the tumult created by the alcohol abuse and domestic violence in the home. Based upon these admissions, the circuit court adjudicated the petitioner as an abusive and neglectful parent.

The matter proceeded to disposition in July 2024, at which time the circuit court also considered the petitioner's motion for a post-adjudicatory improvement period. The petitioner testified that she was participating in parenting and domestic violence classes, had scheduled a psychological evaluation and individual therapy, and had initiated the process of entering an inpatient substance abuse program. She further testified that she attempted to enroll in adult life skills classes and to complete an addiction severity index assessment but was advised she required a DHS referral. The petitioner acknowledged that she was addicted to alcohol and expressed a willingness to comply with any required services. However, she was equivocal when characterizing her drinking and testified that her parenting abilities while intoxicated "depended on the day," stating that there were many days she was able to perform all routine tasks. She admitted that she had previously participated in an outpatient substance abuse program but did not take it seriously. She further acknowledged that she violated the terms of her home incarceration by leaving her residence without authorization to purchase alcohol and by consuming alcohol, including imbibing on the day M.H. nearly drowned. When questioned as to why she would comply with the terms of an improvement period despite failing to comply with the terms of home incarceration, the petitioner responded that she tested negative for alcohol on some tests.

The petitioner also testified that she was diagnosed with bipolar disorder during her participation in the outpatient program and attributed her alcohol use during home incarceration to being unmedicated. She described M.H.'s permanent disability as "very eye-opening" and stated that she now understood the seriousness of her addiction. The petitioner also acknowledged prior arrests for domestic battery and assault against her husband and testified that they continued to reside together. She further admitted that one child, then younger than five years old, previously experienced a near-drowning incident during a family vacation and that another child, then a toddler, suffered a skull fracture while being supervised by a ten-year old sibling while the petitioner worked from home. The petitioner's home incarceration officer testified that the petitioner committed multiple violations of the terms of her home incarceration and did not take those terms seriously, despite receiving services through a day report center that included classes, group therapy, and individual assistance. The circuit court continued the dispositional hearing and deferred ruling on the requested improvement period pending receipt of the petitioner's outpatient treatment records and records related to her bipolar diagnosis and treatment.

The continued dispositional hearing resumed in August 2024. Counsel represented that the petitioner had recently moved into a sober living facility. A Child Protective Services worker testified that the petitioner had not demonstrated that she would adhere to the terms of an improvement period and that she did not believe such a period would result in meaningful change. However, the worker also acknowledged that the petitioner had undergone a psychological evaluation, had worn an alcohol monitoring device, had no positive screens since the prior hearing, and was attending Alcoholics Anonymous meetings. The worker further acknowledged the petitioner's participation in domestic violence, adult life skills, and parenting classes, though noting she had missed several parenting classes. The guardian and the DHS recommended

termination of her parental rights, while the petitioner's husband and former husband (the B. children's non-abusing father) supported her request for an improvement period.

At the conclusion of the evidence, the circuit court observed that the matter involved a long history of domestic violence and found that, despite the petitioner's admissions, her conduct following release from incarceration did not demonstrate recognition that her relationship with her husband required change. After reviewing the petitioner's outpatient treatment records, the court found that she had received intensive treatment from November 2023 through April 2024 and had ample opportunity to make substantial changes but failed to adequately engage. The court further found that the petitioner failed to identify additional services that had not previously been offered to her and noted her repeated violations of the terms of her home incarceration, as well as prior injuries to two of the young H. children while in her care.

In its dispositional order, the circuit court determined that different dispositions were warranted for the two sibling groups. As to the H. children, who were then seven years old and younger, the court found that they were of tender years, required significant care and supervision, and were particularly vulnerable to the petitioner's neglect and alcohol abuse. The court concluded that, due to their ages and dependency, there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of the petitioner's parental rights was in their best interests. The court therefore denied the petitioner's motion for an improvement period and terminated her parental rights to the H. children. By contrast, the court found that the B. children, who were ten years old and older, required less supervision and were primarily in the care of their nonoffending father. The court concluded that, as to these children, the petitioner was likely to comply with an improvement period and that the conditions of abuse and neglect could be substantially corrected. Accordingly, the court granted the petitioner an improvement period as to the B. children.[5] The petitioner appeals from the dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred (1) in denying her motion for a post-adjudicatory improvement period as to her four H. children, and (2) in terminating her parental rights to her four H. children. The petitioner is not entitled to relief on either ground.

_____

[5] While this appeal was pending, the circuit court held a hearing in April 2025 and awarded the petitioner and the B. children's father joint custody of two of the B. children; the third child had reached the age of majority and was dismissed from the proceedings. The father was designated the primary residential custodian of the two minor B. children, and the petitioner exercised parenting time every other weekend. A January 2026 report from the guardian per Rule 11(j) informed the Court that the petitioner has been unable to exercise parenting time since mid-July 2025 due to injuries she sustained in a motor vehicle accident that left her paralyzed from the neck down. The petitioner was not granted post-termination visitation with the H. children, who have had no contact with her for over a year. Criminal charges against the petitioner related to M.H.'s near drowning remain pending, as do charges of DUI causing death stemming from the above-mentioned car accident.

We first observe the broad discretion afforded to circuit courts to make dispositional decisions that they find to be in the children's best interests so long as the dispositional orders contain the requisite findings of fact and conclusions of law with sufficient specificity to protect the rights of litigants and to facilitate appellate review. *In re Edward B.*, 210 W. Va. 621, 632, 558 S.E.2d 620, 631 (2001). Here, the court did not abuse its discretion in ordering different dispositions for the H. children and the B. children. In its dispositional order, the court articulated specific reasons for treating the sibling groups differently and discussed why the best interests of the H. children were different from the best interests of the B. children. *Cf. In re J.F.*, No. 12-1444, 2013 WL 2631307 (W. Va. Jun. 12, 2013) (memorandum decision) (reversing dispositional order where court failed to explain or support its rationale for the different dispositions of the children). The dispositional order in this case meets the legal standard established by the procedural and substantive requirements of our statutes and caselaw.

A parent bears the burden of demonstrating by clear and convincing evidence that she is likely to fully participate in an improvement period. W. Va. Code § 49-4-610(2)(B). Here, the circuit court's conclusion that the petitioner failed to meet that burden is reasonable in light of the record. Although the petitioner points to actions she took following her release from incarceration – attending therapy, sobriety monitoring, participating in classes, and residing in a sober living facility – the court was entitled to weigh those efforts against her demonstrated history of noncompliance with previous instances of treatment and supervision, including violations of home incarceration conditions and continued alcohol use while previously engaged in outpatient services. The court also properly considered the petitioner's failure to meaningfully distinguish how an improvement period would differ from the substance abuse services she had already received, and from which she failed to benefit, prior to the filing of the petition. Thus, the circuit court did not err in concluding that she was unlikely to fully participate in an improvement period or abuse its discretion in denying her motion. *See In re Rebecca K.C.*, 213 W. Va. 230, 235, 579 S.E.2d 718, 723 (2003) (noting that it is within the court's discretion to deny an improvement period if it concludes that such period would be futile); *In re M.M.*, 236 W. Va. 108, 116, 778 S.E.2d 338, 345 (2015) (finding that the evidence supported denial of an improvement period where the conditions of abuse and neglect had occurred despite prior in-home services). Finally, the court's decision to grant an improvement period as to the older B. children, but not the younger H. children, does not establish an abuse of discretion. The court permissibly accounted for the differing risks presented by the children's ages and vulnerabilities when evaluating whether an improvement period would be in their best interests. *See* Syl. Pt. 3, *State ex rel. W. Va. Dep't of Health and Human Res. v. Dyer*, 242 W. Va. 505, 836 S.E.2d 472 (2019) (holding that an improvement period is warranted only where it serves the child's best interests and that the court's order granting an improvement period must make findings demonstrating no resulting prejudice or harm to the child); *In re Charity H.*, 215 W. Va. 208, 216-217, 599 S.E.2d 631, 639-640 (2004) (recognizing that whether a parent receives an improvement period is subject to the children's best interests, which is the paramount concern in an abuse and neglect proceeding). As such, the petitioner is entitled to no relief.

The circuit court likewise did not abuse its discretion in terminating the petitioner's parental rights to the H. children. This Court has "recognized that 'the circuit court is the better-equipped tribunal' to make the substantive determination regarding termination of parental rights."

*In re Rebecca K.C.*, 213 W. Va. at 233, 579 S.E.2d at 722 (citation omitted). Although the petitioner argues that the circuit court relied impermissibly on pre-petition conduct, this Court has repeatedly recognized that prior parental deficiencies and historical failures in treatment are relevant to whether a parent can correct conditions of abuse or neglect. *See In re J.C.*, 232 W. Va. 81, 90, 750 S.E.2d 634, 643 (2013) (per curiam) (affirming termination of parental rights upon finding that parent had not remedied circumstances that led to prior terminations); *In re S.M.*, 250 W. Va. 745, 752, 908 S.E.2d 482, 489 (2024) (affirming termination of parental rights where the parent's repeated substance abuse treatment failures supported the finding that the conditions of abuse or neglect could not be substantially corrected in the near future). The circuit court's findings here reflect more than a conclusory recitation of statutory language; they identify specific factual bases, including the petitioner's long-term alcohol abuse, unsuccessful treatment history, violations of home incarceration terms, minimization of alcohol abuse and domestic violence issues, and the serious injuries suffered by three of the four young H. children while in her care.

The petitioner's comparison of herself to the petitioner in *In re D.E.*, No. 23-209, 2024 WL 2206553 (W. Va. May 13, 2024) (memorandum decision), is unpersuasive. Unlike in that case, where the Court found "there is no evidence to support the circuit court's finding that termination was warranted, and no review of the record renders it plausible[,]" the circuit court here did not ignore evidence of improvement. Rather, it weighed the petitioner's recent efforts against a record demonstrating that similar services had not remedied the conditions of abuse or neglect, in this case alcohol use disorder, that had resulted in serious injuries to the children. This Court has emphasized that circuit courts are not required to exhaust speculative possibilities of parental improvement where the welfare of the child would be seriously threatened. Syl. Pt. 1, *In re R.J.M.*, 164 W. Va. 496, 466 S.E.2d 114 (1980). The court here also appropriately considered the tender years of the H. children and their heightened dependence on consistent, sober caregiving in assessing both the reasonable likelihood of the petitioner's ability to correct the conditions of abuse or neglect and the best interests of the younger H. children. While age alone is not dispositive, it is a legitimate factor in determining whether less restrictive alternatives would adequately protect a child. *See id.* Because the court had ample evidence upon which to base the findings necessary for termination of the petitioner's parental rights to her younger H. children, we conclude that termination was not in error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 8, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: May 14, 2026

**CONCURRED IN BY:**
Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III